IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| Shenzhen Dejiayun Network Technology Co., Ltd., a Chinese Corporation,<br><br>*Plaintiff*,<br><br>v.<br><br>The Partnerships And Unincorporated Associations Identified On Schedule "A",<br><br>*Defendants*. | Case No. 21-cv-06607<br><br>Honorable Charles P. Kocoras<br><br>Honorable Jeffrey I. Cummings |

**WALMART INC.'S MOTION TO MODIFY THE JANUARY 24, 2022 PRELIMINARY INJUNCTION**

NOW COMES Walmart Inc. ("Walmart"), a third-party provider named in the above-captioned matter, by and through its undersigned counsel, and hereby moves that this Court modify the Preliminary Injunction it entered on January 24, 2022 [Dkt. No 27] (the "Preliminary Injunction" or the "Injunction"), which in large part mirrors the Temporary Restraining Order the Court entered *ex parte* on December 20, 2021 [Dkt. No. 17] (the "Temporary Restraining Order" or "Order"), as: 1) the Preliminary Injunction is unduly burdensome in operation, obligating Walmart to provide extensive discovery and block certain accounts on expedited timetables, 2) the request forming the basis of the Preliminary Injunction is neither specific nor narrowly tailored to the relief sought; and 3) the underlying Temporary Restraining Order was provided without prior notice and the Preliminary Injunction was entered without a hearing. In support of this Motion, Walmart states as follows:

**BACKGROUND**

Plaintiff Shenzhen Dejiayun Network Technology Co., Ltd. ("Plaintiff") filed its Complaint on December 10, 2021, alleging that certain named Defendants unlawfully sold or

offered for sale products that infringed upon Plaintiff's BAGILAANOE trademark.[1] The Complaint did not identify with specificity the products that were potentially infringing, either by way of product code or other identifying serial number. In the Complaint, Plaintiff requested extensive injunctive relief that would not only bind the named Defendants, but would also create obligations for non-Defendant third parties (including Walmart).

On December 20, 2021, this Court entered a Temporary Restraining Order requiring that these non-Defendant third-party providers take certain actions that Plaintiff sought. Specifically, Walmart was ordered to, within two business days of receipt of this Order: (1) locate all Online Marketplace Accounts and funds purportedly connected to nearly 30 Defendants, without regard to whether the funds or accounts were actually tied to the purported trademark violation; and (2) restrain and enjoin any such accounts or funds from transferring or disposing of money or other assets until further ordered by this Court.

The Order also required that Walmart, within five days of receipt of such notice, provide to Plaintiff expedited discovery on several matters, including copies of all documents and records relating to: (1) the identities and locations of Defendants (and their agents, servants, employees, confederates, attorneys, and any persons acting in concert or participation with them), including all known contact information and all associated email addresses; (2) the nature of Defendants' operations and all associated sales, methods of payment for services and financial information (including, without limitation, identifying information associated with the Online Marketplaces, Domain Names, and Defendants' financial accounts), as well as a full accounting of Defendants' sales and listing history related to their respective Online Marketplaces and Domain Names; and

---

[1] Walmart, as a non-Defendant third party, does not take a position as to whether this trademark has been violated.

2

(3) any financial accounts owned or controlled by Defendants (and their agents, servants, employees, confederates, attorneys, and any persons acting in concert or participation with them), including such accounts residing with or under the control of any banks, savings and loan associations, payment processors, or other financial institutions. Like with the request concerning the accounts and funds, the discovery requests were not narrowly tailored to the products identified as potentially infringing.

This Court entered the Temporary Restraining Order, without notice, pursuant to Rule 65(b)(1) of the Federal Rules of Civil Procedure. This Court found that if a temporary restraining order was not issued *ex parte*, Plaintiff would be immediately and irreparably harmed because these Defendants (that, again, do not include third-party providers like Walmart) could and likely would modify registration data and content, change hosts, redirect traffic to other websites in their control, and move any assets from accounts in U.S.-based financial institutions, including Walmart.com.

On December 20, 2021, Walmart received notice of the Temporary Restraining Order after it was entered, when Plaintiff's counsel emailed certain members of Walmart's legal department. Counsel for Walmart and plaintiff's counsel then arranged a time to speak by phone. On January 7, 2021, counsel for Walmart told Plaintiff's counsel that Walmart objects to the Temporary Restraining Order as the timetables set forth therein were unreasonably short. Shortly thereafter, Plaintiff moved for a Preliminary Injunction. Plaintiff noticed a hearing on the motion for January 18, 2022; this Court subsequently struck that hearing on January 13, 2022. On January 15, 2022, counsel for Walmart attempted to reach Plaintiff's counsel to seek clarification on when a hearing would be re-set, and provided additional specific information relating to Walmart's position, but received no response.

3

This Court entered a Preliminary Injunction on January 24, 2022, without a hearing. The Injunction mirrors much of the language of the initial Temporary Restraining Order; importantly, the Preliminary Injunction obligates Walmart to freeze funds associated with the same accounts listed on Schedule A and to provide extensive and expedited discovery to Plaintiff upon request.

Despite not being a named Defendant in this action, Walmart was included in the Order (and now, the Preliminary Injunction) due to its status as a third-party provider—an online marketplace where Defendants' products were allegedly sold. And though the Temporary Restraining Order was issued based on alleged trademark infringement by the named Defendants, it did not require immediate action by any of the Defendants. Instead, the onus falls on third-party providers like Walmart—parties that could have been provided notice but, instead, must comply with burdensome immediate actions and discovery that simply cannot be completed on an abbreviated schedule. In addition, the funds sought to be frozen – and discovery requested – are not specifically tied to any purportedly infringing product and thus seek to sweep in accounts and funds wholly unrelated to the purported misconduct. Last, the Injunction is unduly broad as Plaintiff's counsel now requests updated balances from Walmart for the accounts listed in the Injunction, and has informed Walmart that the Injunction also prohibits Walmart from even refunding customers for returns from the accounts. This broad interpretation cannot be accurate, as it would leave Walmart in the untenable position of receiving returns from customers with no account from which to issue a refund. To the extent it is accurate, it is further evidence of the overbreadth of the Injunction.

Because the Preliminary Injunction is thus unduly burdensome, Walmart requests that the Preliminary Injunction be modified to: (1) require Plaintiff to identify the specific items at issue that purportedly violate trademarks, including by identifying specific item numbers and identifying

4

codes; (2) limit the Accounts affected by ¶ 3 and any discovery request pursuant to ¶ 4 to those identified infringing items so as to limit the unnecessary burden and expense in freezing accounts or providing discovery that has no relation to the allegedly infringing trademarks; and (3) order that the Injunction does not require Walmart to provide updated account balances to Plaintiff's counsel indefinitely, nor does it prohibit Walmart from crediting customer refunds from the accounts at issue.

As for the timelines included within the Injunction, given the Court's order, Walmart has fully complied with the terms of the Injunction. Walmart requests, however, consideration in any further proceedings to extend the timetables for transferring or disposing of assets to thirty days, and extend the deadline for Walmart to provide expedited and extensive discovery to Plaintiff to sixty days (*See* Preliminary Injunction, ECF No. 27, at ¶ 3(a)-(b)) and (4(a)-(c)).[2]

## ARGUMENT

This Court has the authority to modify this Preliminary Injunction immediately. *See, e.g.*, *Pettibone Corp. v. Hawxhurst*, 163 B.R. 989, 996 (N.D. Ill. 1994) ("Any court that issues an injunction has the authority to modify the injunction for good cause on the motion of a person adversely affected by it."). *See also* Preliminary Injunction, at ¶ 10. Walmart seeks modification of this Preliminary Injunction for two related reasons: 1) the Injunction is overly burdensome in operation; and 2) Walmart, as a third-party most directly affected by the underlying Order, was not given notice prior to the Order's issuance and the Injunction was entered without a hearing.[3]

---

[2] Walmart does not seek to facilitate the violation of a trademark, but merely requests that its obligations under this Temporary Restraining Order be made more identifiable and reasonable.

[3] As noted above, counsel for Walmart notified Plaintiff's counsel of its objections to the terms of the Order and sought clarification as to the timing of a hearing on the Injunction as the hearing set by the Court was stricken. Plaintiff's counsel did not provide Walmart's counsel additional information until he sent counsel the entered Injunction.

5

*First*, the Preliminary Injunction should be modified because the expedited actions and discovery included in the Injunction are unduly burdensome. This Court has wide discretion to modify this preliminary injunction, and modification is appropriate if "change ha[s] benefits for the parties and the public interest." *Commodity Futures Comm'n v. Battoo*, 790 F.3d 748, 751 (7th Cir. 2015). *See also McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 192 (1949) ("[I]f there were extenuating circumstances or if the decree was too burdensome in operation … Respondents could have petitioned the District Court for a modification, clarification or construction of the order."); Fed. R. Civ. P. 26(b)(2)(C)(iii) (authorizing the court to limit discovery where "the burden or expense of the proposed discovery outweighs its likely benefit"). Here, Walmart must identify and block account activity and provide discovery responses related to nearly 30 entities—all to be accomplished within only two and five days, respectively.

Despite each claim in the Complaint being directed at dozens of defendants that have no affiliation with Walmart, it is Walmart and other third-party providers that must take immediate, affirmative actions to comply with the Injunction. It was Walmart that was directed on December 20, 2021 to "locate *all* accounts and funds" connected to dozens of entities, their online marketplace accounts or websites, and their email addresses, and restrain such accounts or funds from transferring or disposing of assets until further notice within two days of receipt of the Order.[4] Temporary Restraining Order, at ¶ 3(a)-(b). Such an Order is not narrowly tailored to Plaintiff's request, nor is it feasible. This information cannot easily be located, accessed, and blocked by Walmart for a single entity within the time frame provided in the Order—and is a task that certainly cannot be easily achieved for the 29 entities listed on Schedule A to the Order.

---

[4] Walmart consistently receives similar Temporary Restraining Orders issued in this District. During the holiday week alone, Walmart received four separate Orders obligating it to provide extensive discovery and block certain accounts on expedited timetables.

Moreover, as the Injunction is written, it is not proportional to any potential harm that Plaintiffs may suffer. Plaintiff's request is devoid of specific information necessary to identify the products at issue, such as specific identifying numbers or codes (*e.g.*, product number or URL). In addition, the Injunction requires Walmart to locate and freeze *all* accounts and funds connected in any way to 29 entities listed on Schedule A. Certain of those accounts, however, hold millions of dollars in revenue from products whose legitimacy is not at issue. And while the Order limits the accounts or funds to be restrained to "money or other of Defendants' assets," the Order is not limited to funds or accounts actually associated with the purportedly infringing products. Requiring Walmart to freeze legitimate accounts and funds that are not associated with any infringing product is not only unsupported by the law but creates an extreme and unnecessary burden and expense. *See, e.g.*, *E-Link Tech. Co. v. Shenzhen Uni-Sun Elecs. Co.*, No. 20-cv-00247, 2020 WL 8079816, at *3 (N.D. Ill. May 14, 2020) ("[R]estraining all funds received by the Amazon accounts, in light of the relatively small proportion due to the allegedly infringing sales, is disproportionately onerous; to resolve the problem, the Court will modify the preliminary injunction to cap the funds restrained in each of the defendant accounts[.]"). Even further, Plaintiff's counsel has demanded that Walmart provide updated account balances on an ongoing basis, as well as stating that Walmart is prohibited from refunding customers from the subject accounts upon a product return. Such a broad interpretation of the Injunction belies its overbreadth. Walmart cannot be expected to provide Plaintiff's counsel with ongoing balance information when the request is not tied to infringing products and the accounts have been frozen. Nor can it be expected to receive returned products from customers with a request for a refund, but fail to refund the cash from the affected accounts. To the extent the Injunction requires either, it should be further modified.

Walmart is also required to, within five days of receipt of notice of the Injunction, provide expedited and extensive discovery to Plaintiff regarding almost 30 entities. *See id.* at ¶ 4(a)-(c). But such a requirement to produce "*all* documents and records" related to a single "Defendant[']s] operations and *all* associated sales … as well as provid[e] a full accounting of [a single] Defendant[']s] sales and listing history," within five days, let alone for 30 entities, is unduly burdensome on its face. *Id.* (emphasis added).

*Second*, and relatedly, Walmart had no opportunity to object to these portions of the Order prior to the Order's issuance (or to explain to the Court the burdensome nature of the expedited timetables).[5] *See American Can Co. v. Mansukhani*, 742 F.2d 314, 322 (7th Cir. 1984) ("Because an *ex parte* order is proper only when there is no reasonable alternative, we must examine each of the operative terms of the restraining order to determine whether this asserted risk justified the *ex parte* actions."). Although Plaintiff has shown why certain Defendants were not given notice, it has not shown any reason why Walmart and other third-party providers should not have received notice prior to the Order's issuance. Though Walmart and these other third-party providers are not named as Defendants in this matter,[6] the third-party providers are the parties presently affected by the Order and tasked with time-consuming obligations without notice. There was no practical obstacle to giving Walmart notice prior to the Order's issuance. Indeed, Walmart's internal legal counsel and counsel for other third-party providers are listed on the Order itself. And Walmart's good faith objection to this Order does not provide any basis for a belief it will deliberately disobey the Court's discovery orders or work with Defendants to undermine this Order. *See id.* at 324. To

---

[5] Walmart relayed its objections to Plaintiff's counsel after the Order was entered, but there was then no hearing on the Injunction.

[6] Although Plaintiff makes generalized allegations against E-commerce platforms like Walmart, see Compl., ECF No. 1, at ¶ 18 ("Further, 'E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters.'"), Plaintiff brings no formal claim against Walmart—or any other E-commerce platform, for that matter.

the contrary, Walmart is committed to not only complying with Court Orders, but to preventing trademark violations. But Walmart, like the other affected non-parties, must be given an opportunity to explain the burdensome nature of the request and suggest a more reasonable timeframe for the relief sought.[7]

## CONCLUSION

Accordingly, Walmart respectfully requests that the Preliminary Injunction be modified to: (1) require Plaintiff to identify the specific items at issue that purportedly violate trademarks, including by identifying specific item numbers and identifying codes; (2) similarly limit the Accounts affected by ¶ 3 and any discovery request pursuant to ¶ 4 to those specific infringing items so as to limit the unnecessary burden and expense in freezing accounts or providing discovery that has no relation to the allegedly infringing trademarks; and (3) order that the Injunction does not require Walmart to provide updated account balances to Plaintiff's counsel indefinitely, nor does it prohibit Walmart from crediting customer refunds from the accounts at issue.

Walmart also requests consideration in any further proceedings to extend the timetables for transferring or disposing of assets to thirty days, and extend the deadline for Walmart to provide expedited and extensive discovery to Plaintiff to sixty days. *See* Preliminary Injunction, ECF No. 27, at ¶¶ 3(a)-(b), 4(a)-(c).

---

[7] While the issue of notice is no longer ripe before this Court, counsel for Walmart has notified counsel for Plaintiff (a repeat filer of similar Orders in this District) that it expects to receive notice in advance moving forward, such that Walmart has an opportunity to explain its position to the Court in advance of the Court entering a Temporary Restraining Order. Plaintiff's counsel agreed to provide such notice.

9

Dated: January 28, 2022

                    Respectfully submitted,

                    <u>/s/ *Bethany K. Biesenthal*</u>

Bethany Biesenthal (IL Bar No. 6282529)
Robert F. Hart (IL Bar No. 6336007)
JONES DAY
77 West Wacker Drive
Chicago, IL 60601
Telephone: (312) 269-4303
Facsimile: (312) 782-8585
bbiesenthal@jonesday.com
rhart@jonesday.com

*Counsel for Walmart Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 28, 2022, I caused a copy of the foregoing to be filed with the Clerk of the Court through the CM/ECF system, which will provide notice of the filing to all counsel of record.

   /s/ *Bethany Biesenthal*
Bethany Biesenthal
JONES DAY
77 West Wacker Drive
Chicago, IL 60601
Telephone: (312) 269-4303
Facsimile: (312) 782-8585
bbiesenthal@jonesday.com
rhart@jonesday.com

*Counsel for Walmart Inc.*