UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Shenzhen Dejiayun Network Technology Co., Ltd., <br><br> Plaintiff, <br><br> v. <br><br> The Partnerships and Unincorporated Associations Identified on Schedule "A", <br><br> Defendants. | Case No.: 1:21-cv-06607 <br><br> Hon. Judge Manish S. Shah <br><br> Hon. Jeffrey I. Cummings |

### Defendant's Motion to Vacate Default Judgment

**NOW COMES** defendant Tonighthere ("Defendant"), by and through their undersigned counsel, and hereby move this Court to vacate the default judgment entered against Defendant and if not dismiss them, then allow Plaintiff's case against them proceed on the merits.

### I. Background and Procedural History

Plaintiff filed its complaint on December 10, 2021, alleging that Defendants committed trademark infringement, false designation of origin, and Illinois Uniform Deceptive Trade Practice violations. [Dkt. 1]. On December 15, 2021, Plaintiff filed an ex parte motion for entry of a temporary restraining order, which was granted on December 20, 2021. [Dkt. 14, 17]. The temporary restraining order permitted Plaintiff to complete service of process to Defendant pursuant to Federal Rule of Civil Procedure 4(f)(3) by electronically publishing a link to the Complaint, any Amended Complaint, the TRO, and other relevant documents on a website and by sending an e-mail to the e-mail addresses identified in Exhibit three to the Declaration of Deng Jialiang and any email addresses provided for Defendants by third parties that includes a link to said website. [Dkt 17 ¶ 6]. A Default Judgement Order was entered on February 17, 2022, awarding Plaintiff $50,000 in statutory damages pursuant to 15 U.S.C. § 1117(c)(2). [Dkt. 45, ¶ 2].

Taking advantage of Federal Rule Civil Procedure 4(f)(3), Plaintiff has attempted to serve the defendants in bulk using email processes. However, this method of service, under the circumstances, violates the express wording of Rule 4(f)(3), as interpreted in light of international agreements. Plaintiff has not served Defendant as required under Federal Rules or international agreement and, for this reason, the default judgement should be vacated and Defendant should be dismissed.

## II. Argument

### a. Legal Standard

The Seventh Circuit has a "well-established policy favoring a trial on the merits over a default judgment." Gersbacher v. Larsen, 1991 WL 18425, at *1 (N.D. Ill. Feb. 5, 1991). Federal rules provide that the Court may vacate a default judgment due to reasons of "mistake, inadvertence, surprise, or excusable neglect" so long as such relief is requested sooner than one (1) year after the entry of the judgment. Fed. R. Civ. P. 60(b)(1), (c). In the Seventh Circuit, a defaulting party seeking to vacate a judgment on this basis bears the burden of showing that the default judgment resulted from mistake, inadvertence, surprise or excusable neglect and that they have a meritorious defense. Passarella v. Hilton Int'l Co., 810 F.2d 674, 676 (7th Cir. 1987). Because default judgments are harsh, it is appropriate for the Court to liberally apply Rule 60(b)(1) to parties seeking relief therefrom "where those judgments result from honest mistakes rather than willful misconduct, carelessness or negligence." Ellingsworth v. Chrysler, 665 F.2d 180, 185 (7th Cir. 1981); Anilina Fabrique de Colorants v. Aakash Chemicals & Dyestuffs, Inc., 856 F.2d 873, 879 (7th Cir.1988) (courts must generally grant relief from a default judgment when "the moving party acts with reasonable promptness, alleges a meritorious defense to the action, and where the default has not been willful."). Resolution of a case on its merits is especially true where the judgment involves large sums of money, as it does in this case. Id. (vacating a default judgment of $175,000).

Alternatively, the Court may vacate a default judgment where the judgment is void. Fed. R. Civ. P. 60(b)(4); Bally Exp. Corp. v. Balicar Ltd., 1985 WL 2006, at *1 (N.D. Ill. July 3, 1985), *citing*, Thomas P. Gonzalez Corp. v. Consejo Nacional De Produccion De Costa Rica, 614 F.2d 1247, 1255 (9th Cir. 1980). While the grant of relief under Rule 60(b) is generally an extraordinary remedy, where a judgment is void, the Court has a non-discretionary duty to grant relief therefrom, irrespective of any delay on the part of the defendant. Bally Exp. Corp.; Philos Techs., Inc. v. Philos & D, Inc., 645 F.3d 851, 857 (7th Cir. 2011), *citing*, Taft v. Donellan Jerome, Inc., 407 F.2d 807, 808 (7th Cir. 1969); Pacurar v. Hernly, 611 F.2d 179, 181 (7th Cir. 1979) (noting that, in regard to motions under Rule 60(b)(4), the reasonable time limitation in Rule 60(c)(1) must generally mean no time limit, at least absent exceptional circumstances) (internal quotations omitted).

**b. The Default Judgement should be vacated pursuant to Rule 60(b)(4) because it is void because Plaintiff has failed to effect proper service of process on Defendant.**

Every defendant must be served with a copy of the complaint and summons in accordance with Rule 4. Fed R. Civ. P. 4(c)(1). Only proper service vests a district court with personal jurisdiction over a defendant. Cardenas v. City of Chicago, 646 F. 3d 1001, 1005 (7th Cir. 2011). Actual knowledge of the existence of a lawsuit, alone, "is insufficient to confer personal jurisdiction over a defendant in the absence of valid service of process." Mid-Continent Wood Prods., Inc. v. Harris, 936 F.2d 297, 301 (7th Cir. 1991). A judgement is void if the defendant was not properly served with process. Lefevre v. Concord Servicing Corp., 2000 WL 45457, at *2 (N.D. Ill. Jan. 11, 2000), *citing*, Printed Media Services, Inc. v. Solna Web, Inc., 11 F.3d 838, 843 (8th Cir. 1993). Courts repeatedly have vacated default judgments where service of a complaint was improper. *See*, Dyno, LLC v. Se. Asia Direct, Ltd., 2012 WL 130087, at *3 (N.D. Ill. Jan. 13, 2012) (setting aside default judgment because service upon a corporation's attorney, who was neither an officer or agent of defendant, was improper); KTM AG v. The Individuals, Corporations, Limited Liability

Companies, Partnerships, and Unincorporated Associations Identified on Schedule A Hereto, 21-cv-02732 [Dkt. 82] (vacating default judgment where Plaintiff failed to effect service of process as provided under the TRO) (J. Ellis); Annuity Plan of the Int'l Union of Operating Eng'rs Local No. 649 v. DEM/EX Grp., 2008 WL 4491951, at *1-2 (C.D. Ill. Oct. 2, 2008) (default judgment void where service upon corporation's president, who not a registered agent or otherwise authorized to accept service, was improper); Guess ?, Inc. v. Chang, 163 F.R.D. 505, 508 (N.D. Ill. 1995) (vacating default judgment where complaint was served upon an attorney who plaintiff had never authorized to accept service). Taking advantage of Federal Rule Civil Procedure 4(f)(3), Plaintiff has attempted to serve the defendants in bulk using email processes. However, this method of service, under the circumstances, violates the express wording of Rule 4(f)(3), as interpreted in light of international agreements. Plaintiff has not served Defendant as required under Federal Rules or international agreement and, for this reason, the default judgement should be vacated and Defendant should be dismissed.

### i. The Hague Convention is an international agreement that, where applicable, limits court-ordered methods of service under Fed R. Civ. P. 4(f)(3).

Rule 4(f) governs service of process to an individual and provides that "an individual … may be served at a place not within any judicial district of the United States…by other means *not prohibited by international agreement*, as the court orders." Fed. R. Civ. P. 4(f)(3) (emphasis added). The Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638 (the "Hague Convention") is such an international agreement as stated in Rule 4(f)(3). **Exhibit 1**. The Supreme Court, Federal Circuit Courts, and District Courts had repeatedly and uniformly held that the Hague Convention, where applicable, limits court-ordered methods of service under Rule 4(f)(3) and compliance with

the Hague Convention is mandatory wherever it applies. Water Splash Inc. v. Menon, 137 S.Ct. 1504, 1507 (2017)( "the Hague…Convention specifies certain approved methods of service and 'pre-empts inconsistent methods of service wherever it applies."); Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 705 (1988)("[C]ompliance with the Convention is mandatory in all cases to which it applies."); Brockmeyer v. May, 383 F.3d 798, 801 (9th Cir. 2004) (Reviewing method of service under Rule 4(f)(3) only after deciding that the Hague Convention does not prohibit the method, and holding "[b]ecause service of process was attempted abroad, the validity of that service is controlled by the Hague Convention, to the extent that the Convention applies); Rio Properties, Inc. v. Rio Intern. Interlink, 284 F.3d 1007, 1015 n.4 (9th Cir. 2002) ("A federal court would be prohibited from issuing a Rule 4(f)(3) order in contravention of an international agreement, including the Hague Convention ..."); Ackermann v. Levine, 788 F.2d 830, 838 (2nd Cir. 1986) ("Service of process must satisfy both the statute under which service is effectuated and constitutional due process. The statutory prong is governed principally by the Hague Convention."); Sulzer Mixpac AG v. Medenstar Indus. Co., 312 F.R.D. 331, 331-332 (N.Y.S.D. 2015) (analyzing Rule 4(f)(3) service in light of the requirement of the Hague Convention); Richmond Techs., Inc. v. Aumtech Bus. Sols., 2011 WL 2607158, at *12 (N.D. Cal. July 1, 2011) ("The question in this case is whether service of the Indian Defendants by substituted service on their attorney under Rule 4(f)(3) comports with the Hague Convention.").

More importantly, as a ratified treaty, the Hague Convention's application to Rule 4(f)(3) is required by the U.S. Constitution. *See* U.S. Const. Art. VI, cl. 2; *See also,* Ackermann ("As a ratified treaty, the Convention is of course the supreme law of the land."). In contrast, where the Hague Convention does *not* apply, courts have held that service of process via publication and email were sufficient. *See e.g.*, Smith v. Islamic Emirate of Afghanistan, 262 F. Supp. 2d 217 (S.D. N.Y. 2003) (holding that service of process by publication was allowed, disregarding the Hague Convention requirements as Afghanistan was not a signatory thereto); In re Int'l Telemedia

Assocs., Inc., 245 B.R. 713 (Bankr. N.D. Ga. 2000) (holding service of process by email allowed and the Hague Convention requirements inapplicable as defendants had no known address).

### ii. The Hague Convention is applicable to the Defendant's service of process.

The Hague Convention applies only when certain conditions are met. First, both the origination State and the destination State of the document must be contracting states to the Hague Convention. *See*, Int'l Controls Corp. v. Vesco, 593 F.2d 166, 178 (2nd Cir. 1979) (holding the Hague Convention not applicable as the destination State Bahamas was not a signatory). Second, there must be occasion to transmit a judicial or extrajudicial document for service abroad. Third, the defendant's address must be known. *See*, the Hague Convention, Art. 1 ("The present Convention shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad. This Convention shall not apply where the address of the person to be served with the document is not known.")

For Defendant, all conditions are met. First, both the United States and China are signatories to the Hague Convention. **Exhibit 1**. Second, there was occasion to transmit a judicial document for service abroad, because Defendant has no place of business or agent receiving process in the United States. Declaration of Weidong Li ¶ 4. Third, the Defendant's address was on its Walmart storefront and made known to Plaintiff prior to it attempting to effect services of process. Id. ¶ 5-6. This address was also valid and authentic, and any mail bearing the address can successfully reach the Defendant. Id. ¶ 7; Declaration of Quan Miao Zhu ¶ 3. Accordingly, the Hague Convention thus applies to Plaintiff's attempt to serve Defendant with process in this action.

### iii. The Hague Convention prohibits Plaintiff's method of service of process.

The Hague Convention enumerates several permitted methods of service and prohibits all which are not enumerated. The Supreme Court and several Circuit have repeatedly confirmed this

reading. In Water Splash Inc. and Volkswagenwerk, the Supreme Court stated that "the Hague…Convention specifies certain approved methods of service and 'pre-empts inconsistent methods of service' wherever it applies." Water Splash Inc., at 1507; Volkswagenwerk, at 699. It also states that "compliance with the [Hague] Convention is mandatory in all cases to which it applies." Volkswagenwerk, at 705. The Second Circuit and Ninth Circuit also have followed the rule that the method of service abroad must be permitted under a specific article of the Hague Convention. *See*, Ackermann (holding service of process by registered mail valid only after finding that Hague Convention Article 8 and Article 10 specifically permitted it); Brockmeyer (holding service of process by mail valid only after finding Hague Convention article 10(a) specifically permitted it). Plaintiff cannot identify which specific article of the Hague Convention permits its service of process by a combination of website publication and email notice. Specifically, the Hague Convention permits only the following methods of service, consisting of service by central authority (Article 2-7), by diplomatic and consular agents (Article 8-9), by mail or through judicial official of the State of destination if the destination State does not object (Article 10), by methods allowed by other international agreement (Article 11), and by other means as allowed by the internal laws of the destination State (Article 19). **Exhibit 1**; *See also*, Water Splash Inc., at 1508 (reviewing the permitted methods of service).

In the present case, service by publication is not permitted by any enumerated method of service under the Hague Convention. Specifically, Plaintiff's method of service does not fall under Article 11 because U.S. and China do not otherwise have a treaty on the service of process. The method of service also does not fall under Article 19, as China's internal laws prohibit service by email or website publication unless a plaintiff has exhausted other means of service. **Exhibit 2** (Excerpts of Civil Procedural Law of the People's Republic of China (Amended in 2017), including relevant Articles 87 and 92, is published and translated by Wolters Kulwer). Plaintiff's method of service also clearly does not fall under Article 2-9 of the Hague Convention (*i.e.*, service by central

authority or by consular agents). **Exhibits 1, 2**. Because Plaintiff's method of service was not *permitted* by the Hague Convention, it was thus *prohibited* by the Hague Convention and consequently insufficient under Rule 4(f)(3).

### c. Alternatively, the Default Judgment may be set aside due to Defendant's excusable neglect pursuant to Rule 60(b)(1).

The Supreme Court has defined "excusable neglect" as "both simple, faultless omissions to act and, more commonly, omissions caused by carelessness." Sullivan v. Gen. Plumbing, Inc., 2007 WL 1030236, at *3 (N.D. Ill. Mar. 31, 2007), *citing*, Pioneer Investment Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 388 (1993). The Seventh Circuit adopts a more limited definition of "excusable neglect" for Rule 60(b)(1) purposes, which "requires something more compelling than ordinary lapses of diligence or simple neglect to justify disturbing the judgment. Coyote Logistics, LLC v. AMC Cargo Inc., 2017 WL 1862642, at *2 (N.D. Ill. May 9, 2017), *citing*, Jones v. Phipps, 39 F.3d 158, 162 (7th Cir. 1994); *Compare*, Laguna Royalty Co. v. Marsh, 350 F.2d 817, 823 (5th Cir. 1965); Rosebud Sioux Tribe v. A&P Steel, Inc., 733 F.2d 509, 515 (8th Cir. 1984) (stating that Rule 60 is meant to ensure that justice is served, and that courts must not allow a judgment to further injustice); Shores v. Sklar, 885 F.2d 760, 766 (11th Cir. 1989); TCI Group Life Ins. Plan v. Knoebber, 244 F.3d 691 (9th Cir. 2001) (stating that excusable neglect may be based on a defendant's "credible good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decisionmaking [sic], or otherwise manipulate the legal process," and will not be found to be intentional). Generally, a defendant seeking to vacate a default judgment under Fed. R. Civ. P. 60(b)(1) has the burden of establishing: "(1) good cause for the default; (2) quick action to correct it; and (3) a meritorious defense to the complaint." Wehrs v. Wells, 688 F.3d 886, 890 (7th Cir. 2012).

    ***i.*** *Good cause exists for Defendant's default.*

At no point did Defendant intend to avoid the current litigation, and Defendant did not even become aware of this case until May 2022, after Default was entered. Huixin Decl. ¶ 8. Since becoming aware of the current litigation, Defendant immediately retained counsel in China to conduct settlement discussions with Plaintiff and retained local counsel in Chicago. Id. ¶¶ 9-10. This can be contrasted with what has been described as the "theme running through the case law" of default judgments being left intact: "[w]here it appears that the defaulting party has willfully chosen not to conduct its litigation with the degree of diligence and expediency prescribed by the trial court." C.K.S. Engineers, Inc. v. White Mountain Gypsum Co., 726 F.2d 1202, 1205 (7th Cir. 1984) (collecting cases).

The standard for demonstrating good cause is "justifiably vague" and the Court has "great latitude" to discern if good cause exists. Phipps, 29 F.3d at 164; See, Baker v. Optionit, Inc., 2015 WL 9182584, at *2 (N.D. Ill. Dec. 17, 2015) (good cause for defendant's failure to respond included lack of actual notice); See also, Summit Fin. Res. L.P. v. Big Dog Enterprises Logistics, LLC, 2008 WL 687279, at *2 (S.D. Ill. Mar. 12, 2008) (finding good cause where defendant's internal process lost the complaint). Defendant demonstrates that it has not "willfully refus[ed] to litigate the case properly," and upon the Court's examination it can find that good cause exists to vacate the Default Judgment. See, Comerica Bank v. Esposito, 215 F. App'x 506, 508 (7th Cir. 2007).

### ii. Defendant responded reasonably to address the default judgement.

While Rule 60(b) sets a one-year time limit on bringing a motion to vacate a default judgement, a defendant does not comply with Rule 60(b) simply by filing its motion within that absolute limitation - the delay must also be reasonable. Kagan v. Caterpillar Tractor Co., 795 F.2d 601, 610 (7th Cir. 1986). The determination of what is reasonable includes "the interest in finality, the reason for delay, the practical ability to learn earlier of the grounds relied upon, and prejudice to other parties." Planet Corp. v. Sullivan, 702 F.2d 123, 126 (7th Cir. 1983), *quoting*,

Ashford v. Steuart, 657 F.2d 1053, 1055 (9th Cir. 1981).

This Court entered the default judgment on February 17, 2022. [Dkt. 45]. It is now less than nine months since the default judgment order and Defendant has been diligent in addressing the dispute since they became aware of the case in May 2022, including obtaining foreign and local counsel and engaging Plaintiff's counsel to explore settlement. Lu Decl., ¶¶ 8-10; See, Philos Techs., Inc. v. Philos & D, Inc., 645 F.3d 851, 856 (7th Cir. 2011) (motion for relief from final judgment for lack of personal jurisdiction was not untimely although it had been filed nearly one year after entry of default judgment.); Cent. Laborers' Pension, Welfare & Annuity Funds v. W.C. Beiser Concrete Co., 2011 WL 1549226, at *2 (S.D. Ill. Apr. 21, 2011) (defendant acted promptly despite waiting approximately four months to move to vacate default). Cf., Simon v. Pay Tel Mgmt., Inc., 952 F.2d 1398 (7th Cir. 1992) (delay not reasonable where motion to vacate filed just short of the one-year limitation); Mayfair Extension, Inc. v. Magee, 241 F.2d 453 (D.C. Cir. 1957) (a delay of 11 ½ months in alleging fraud was held unreasonable when appellant had known of the default for almost a year); Dominguez v. United States, 583 F.2d 615 (2d Cir. 1978), cert. denied 439 U.S. 1117 (1979) (10-month delay occasioned by counsel's "abysmal neglect" was unreasonable and Rule 60(b) relief would not be granted). Plaintiff will not be harmed in any way if it is forced to litigate now, rather than in February. Plaintiff was undoubtedly prepared to litigate the case and it is highly unlikely that it has lost access to relevant evidence or lost touch with relevant witnesses, particularly considering Plaintiff has identical cases currently pending in this Court.

    ***iii.*** *Defendant has meritorious defenses to Plaintiff's claims.*

A meritorious defense need not, beyond a doubt, succeed in defeating a default judgment, but it must at least "raise[ ] a serious question regarding the propriety of a default judgment and…[be] supported by a developed legal and factual basis." Phipps, 39 F.3d at 165. As set forth above, the default judgment is void as a result of insufficient service of process. Separately, the

meritorious defense of fraud in the procurement of Plaintiff's asserted trademark registration defeats Plaintiff's trademark claims. "Fraud in the procurement of a trademark registration may be raised as an affirmative defense to a charge of infringement of a registered mark." Mod. Fence Techs., Inc. v. Qualipac Home Imp. Corp., 726 F. Supp. 2d 975, 988 (E.D. Wis. 2010); 15 U.S.C.A. § 1115(b)(1); Am. Nat'l Ins. Co. v. Am. Nat'l Inv. Advisors, LLC, 2014 WL 6613342 at *9 (N.D. Ill. Nov. 21, 2014) ("Fraud upon the USPTO in trademark registration may be asserted in a variety of procedural contexts, including as an affirmative defense to an infringement action."); eCash Techs., Inc. v. Guagliardo, 127 F.Supp.2d 1069, 1079 (C.D. Cal.2000) ("Fraud in procurement of a trademark registration may be raised as a ground for cancellation in civil litigation, in which case it may function as a 'defense' to a claim of trademark infringement."). Such fraud "occurs when an applicant knowingly makes false, material representations of fact in connection with his application." In re Bose Corp., 580 F.3d 1240, 1243 (Fed.Cir.2009); see also, Money Store v. Harriscorp*Fin., Inc., 689 F.2d 666, 670 (7th Cir.1982) ("Fraud will be deemed to exist only when there is a deliberate attempt to mislead the Patent Office into registering the mark.").

As alleged in the Complaint, Plaintiff ostensibly owns the BAGILAANOE trademark. In Plaintiff's application for the mark, Plaintiff represented to the U.S. Trademark office that its date of first use of the mark anywhere was "[a[t least as early as 09/10/2018" and that its date of first use of the mark in U.S. interstate commerce for all of the Products was "[a]t least as early as 09/15/2018." As evidence of such use, Plaintiff submitted only two undated photographs of a single type of clothing product, namely an infant shirt. On information and belief, Plaintiff was not in fact using the mark on all of its products on the dates Plaintiff represented to the USPTO, and knowingly misrepresented the nature of its purported use of the mark with the intent to deceive the USPTO. Based on these facts, Defendant has numerous affirmative defenses ranging from fraud on the USPTO and Plaintiff's unclean hands, among others. Needless to say, Defendant is confident that

once all the facts are presented, all of Plaintiff's claims will be exposed as meritless.

### III. Conclusion

Intellectual property infringement suits against anonymous and generally-Chinese e-commerce retailers are very common in this District and few would disagree that intellectual property infringement is a matter that should be aggressively policed. However, this motivation does not excuse a brand-owner, like Plaintiff, from obtaining judicial relief without complying with federal rules or the Court's jurisprudence. The Defendant was not properly before this Court and thus the default and Default Judgment obtained against it should be vacated and the Defendant, if not dismissed, be allowed an opportunity to substantively respond to the Complaint.

Dated: November 14, 2022

Respectfully submitted,

/s/Adam E. Urbanczyk
AU LLC
564 W. Randolph St. 2nd Floor
Chicago, IL 60661
adamu@au-llc.com
Ph.    (312) 715-7312
Fax    (312) 646-2501
*Attorney for Defendant*