IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHENZHEN DEJIAYUN NETWORK TECHNOLOGY CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> The Partnerships and Unincorporated Associations Identified on Schedule A. <br><br> Defendants. | Case No. 21-cv-06607 <br><br> Honorable Manish S. Shah |

**DEFENDANTS HOMGOOD, KONENI, LOOLING, AND VNING'S
MOTION TO VACATE DEFAULT JUDGMENT**

Pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, Defendant No. 5 Xiupinxuan d/b/a Homgood ("Homgood"), No. 6 Lesaijia d/b/a Koneni ("Koneni"), No. 8 Huafu d/b/a Looling ("Looling"), and No. 21 Yiwuqizhong d/b/a Vning ("Vning") through their attorneys, respectfully submit this motion to vacate the default judgment (ECF 45).

## I. INTRODUCTION

Homgood, Koneni, Looling, and Vning are walmart.com storefronts operated by the four entities listed below (collectively, "Defendants"), all of which are based in China. Homgood and Looling have not sold any allegedly infringing products to customers in Illinois. Koneni made 13 allegedly infringing sales totaling $269.26, and Vning made 5 such sales totaling $120.64. None of the Defendants made any sales—anywhere—using Plaintiff's alleged BAGILAANOE mark. None of the Defendants have any other contacts with Illinois.

On February 17—based on Plaintiff's representation that each of the Defendants "sold products using infringing and counterfeit versions of Plaintiff's BAGILAANOE Trademark … to residents of Illinois," the Court entered default judgment against them. (ECF 45 at 2.) In fact, Defendants never made any such sales. As described above, Homgood and Looling made no

allegedly infringing sales whatsoever in Illinois. Koneni and Vning made 13 and 5 sales, respectively, but the products they sold were <u>not</u> marked with the BAGILAANOE mark. These Defendants sell generic, unlabeled merchandise that they lawfully obtain from the manufacturer.

Because Defendants made no relevant sales to customers in Illinois and have no other contacts with Illinois, this Court lacks personal jurisdiction over them. Thus, the default judgment should be vacated and the claims against them should be dismissed.

In the alternative, even if the Court were to determine that it had personal jurisdiction one or more of these defendants, the default judgment should be vacated because the delay is excusable and Defendants have numerous meritorious defenses as set forth below.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The following facts are set forth in the attached declaration of Yao Ge ("Ge Decl."), and Mr. Hua Chen Decl. ("Chen Decl."):

1. Homgood is the Walmart storefront alias for Defendant No. 5 Xiupinxuan, a limited liability company registered in Zhejiang Province, China. (Ge Decl. ¶ 3.)

2. Koneni is the Walmart storefront alias for Defendant No. 6 Lesaijia, a limited liability company registered in Guangdong Province, China. (Ge Decl. ¶ 4.)

3. Looling is the Walmart storefront alias for Defendant No. 8 Huafu, a limited liability company registered in Zhejiang Province, China. (Ge Decl. ¶ 5.)

4. Vning is the Walmart storefront alias for Defendant No. 21 Yiwuqizhong, a limited liability company registered in Zhejiang Province, China. (*Id.* ¶ 6.)

5. Defendants' Walmart businesses are commonly managed and owned by Shenzhen Kesitong Information Technology Co., Ltd. (*Id.* ¶ 2.)

6. Defendants have no physical presence in Illinois. They have no employees in Illinois. They do not own any property in Illinois. They do not sell any merchandise in any physical stores in Illinois. (*Id.* ¶ 7.)

7. Defendants sold merchandise on the Walmart Marketplace through walmart.com which is run by Walmart. (*Id.* ¶ 8.)

8. The Walmart Marketplace permits, and in fact encourages, multiple sellers to offer the same product for sale on a preexisting listing. (*Id.* ¶ 9.) When multiple sellers offer to sell the same product, the ecommerce platform's algorithm selects which seller is the default seller for the listing and which sellers are additional sellers, and presents the listing accordingly on walmart.com. (*Id.*) Consumers can buy the product from any of these sellers if they choose to do so. (*Id.*)

9. Each product on walmart.com can be identified by a unique Product ID. (*Id.* ¶ 10; *see also* Chen Decl. ¶ 4, Ex. 3.) To make a competing offer, a Seller first searches walmart.com listings by the Product ID and identifies the existing walmart.com listing, adds offer details including product SKU and selling price, and submits the information to walmart.com. (Ge Decl. ¶ 10.) The Walmart Marketplace processes the submission and approves the new seller. (hereinafter the "Walmart Additional Seller Procedure"). (*Id.*) The Walmart Marketplace then places the seller on the same product listing. (*Id.*) A junior seller may not alter the content of a pre-existing product listing. (*Id.*; *see also* Chen Decl. ¶ 3.; Ex. 2.)

10. Defendants made competing offers for a number of Plaintiff's listings pursuant to the Walmart Additional Seller Procedure. (Ge Decl. ¶ 11) In other words, Defendants joined Plaintiff as additional sellers offering the same products for sale. (*Id.*) Defendants obtained the apparel lawfully from manufacturers in China. (*Id.* ¶ 12.)

11. The merchandise that Defendants offered for sale on Walmart.com to compete with Plaintiff consists of generic apparel sourced from manufacturers in China. (*Id.* ¶ 12.) None of the apparel is labeled with the BAGILAANOE mark. (*Id.*) The apparel is not labeled with any marks or brands at all. (*Id.*) Manufacturers made the apparel generally available to interested buyers. (*Id.*) On information and belief, such buyers include Plaintiff. (*Id.*) On information and belief, the merchandise that Plaintiff offered for sale on walmart.com under the BAGILAANOE "brand" consists of generic apparel with no brand labels affixed to the merchandise either. (Chen Decl. ¶ 5; Ex. 4)

12. The apparel that Defendants offer for sale on walmart.com is sent to the consumer without any brand tags or labels affixed to the apparel and without any brand tags or labels printed on the packaging. (Ge Decl. ¶ 13.)

13. Defendants cannot alter how Plaintiff uses the BAGILAANOE mark in Plaintiff (or Plaintiff licensee's) listings, because there is only one listing for each product, and the Walmart Marketplace does not allow Defendants to change the content of those listings. (*Id.* ¶ 14; *see also* Chen Decl. ¶ 3; Ex. 2.)

14. Defendants have searched their sales records for any "BAGILAANOE" listings to which they made competing sales. (Ge Decl. ¶ 15.) The search covers the listings shown by Plaintiff in screenshots that Plaintiff presented as evidence of trademark infringement to the Court. (*Id.*) For Homgood and Looling there were no sales to customers in Illinois of any products listed by "BAGILAANOE" for sale on walmart.com. (*Id.*) Koneni made 13 allegedly infringing sales totaling $269.26, and Vning made 5 such sales totaling $120.64. (*Id.*)

15. When Defendants learned of Plaintiff's claims, officers from Shenzhen Kesitong Information Technology Co., Ltd visited the Plaintiff in China and tried to settle the lawsuit with Plaintiff directly. (*Id.* ¶ 16.) Plaintiff explained that they are agreeable to a settlement, but

4

advised that Defendants must email Plaintiff's counsel because counsel has the ultimate settlement authority. (*Id.* ¶ 16.)

16. Defendants emailed Plaintiff's counsel on February 8, 2022 in an attempt to resolve the dispute. (*Id.* ¶ 17.) The employees managing the storefronts are Chinese nationals with no legal training or background. (*Id.*) None of Defendants were represented by legal counsel in the United States. (*Id.*) Plaintiff's counsel made a counteroffer on February 12. (*Id.* ¶ 18.)

17. After the Court entered the default on February 17, 2022, Defendants continued to reach out to Plaintiff's counsel to seek settlement. (*Id.* ¶ 19.) Defendants' emails dated February 23, 2022 and April 14, 2022 were both ignored. (*Id.*) On separate occasions in March, May, and June, Defendants further contacted Plaintiff through Shenzhen Kesitong Information Technology Co., Ltd. in order to obtain a response from Plaintiff's counsel. (*Id.*)

18. On July 1, 2022, Plaintiff's counsel responded that Homgood, Koneni, Looling, and Vning would have to pay respectively $50,000, $50,000, $14,385.91, and $50,000 to end the dispute. (*Id.* ¶ 20.) $50,000 is the amount awarded by the Court in the default judgment order. (*Id.*) The July 1, 2022 demand amount increased significantly from Plaintiff counsel's previous settlement positions. (*Id.*)

19. Around late June and early July, Defendants began to feel that Plaintiff's counsel and Plaintiff were playing delay tactics and were negotiating in bad faith. (*Id.* ¶ 21.) Defendants began to search for legal representation in the United States. (*Id.*)

20. Defendants searched diligently for several months before locating their present counsel. (*Id.* ¶ 22.) Specifically, Defendants interviewed three law firms before locating their present counsel. (*Id.*) Two firms expressed reluctance for representation. (*Id.*) One top international law firm – Winston Strawn – quoted a prohibitive case budget. (*Id.*) Communication with each of these law firms took a significant time. (*Id.*)

5

21. Defendants do not have any prior experience with U.S. lawsuits. (*Id.* ¶ 23.) Defendants did not appreciate the legal consequences for missing the default hearing. (*Id.*)

### III.     ARGUMENT

Rule 60(b) provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; … (4) the judgment is void; …." Fed. R. Civ. P. 60(b); *see also* Fed. R. Civ. P. 55(c). Both grounds apply here.

#### A.     The Default Judgment Is Void Because the Court Lacks Personal Jurisdiction over Defendants.

When the court lacks personal jurisdiction over a defendant, the Court *must* vacate a default judgment under Rule 60(b)(4). *See Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 911 (7th Cir. 2015) ("if district court lacked jurisdiction it was a *per se* abuse of discretion to deny the Rule 60(b)(4) motion"); *see also be2 LLC v. Ivanov*, 642 F.3d 555, 557-58 (7th Cir. 2011). Here, contrary to Plaintiff's representations, Defendants made no relevant sales to customers in Illinois, and Defendants have no other contacts with Illinois.

A federal court has personal jurisdiction over a party only if such jurisdiction is authorized under Illinois law and satisfies the requirements of the United States Constitution. *be2 LLC*, 642 F.3d at 558. These requirements collapse into one, because the Illinois long-arm statute authorizes jurisdiction for "any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c). To satisfy the Due Process Clause, personal jurisdiction must be based on "minimum contacts with Illinois such that requiring him to defend against this lawsuit in the state 'does not offend traditional notions of fair play and substantial justice.'" *be2 LLC*, 642 F.3d at 558 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Regarding Homgood and Looling, they made no infringing sales. *See supra*, § II, ¶¶ 6, 14. It is well established that owning or operating a website accessible in Illinois, in the absence of any Illinois sales or other contacts to Illinois, is not sufficient for the Court to have personal jurisdiction over the party. *See Mori Lee, LLC v. P'ships and Unincorp. Ass'ns Identified in Ex. A*, No. 20-cv-7648, 2022 WL 523123, at *3 (N.D. Ill. Feb. 22, 2022); *Rubik's Brand, Ltd. v. P'ships and Unincorp. Ass'ns Identified in Ex. A*, No. 20-cv-5338, 2021 WL 825668, at *4 (N.D. Ill. Mar. 4, 2021); *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014), *be2 LLC*, 642 F.3d at 558. Therefore, the Court lacks personal jurisdiction over Homgood and Looling, and the default judgment must be vacated and the claims against them dismissed. *See Mori Lee, LLC,* 2022 WL 523123, at *3; *Rubik's Brand, Ltd.*, 2021 WL 825668, at *4; *Advanced Tactical*, 751 F.3d at 803; *be2 LLC*, 642 F.3d at 558.

Regarding Defendants Koneni and Vning, they have no contacts with Illinois other than that they also maintain an interactive website and have made minimal sales of products that *Plaintiff* listed with the BAGILAANOE mark to Illinois customers. *See supra*, § II, ¶¶ 6, 14. These sales to Illinois customers do not confer personal jurisdiction for the simple reason that they are not related in any meaningful way to the allegations of wrongdoing. Defendants Koneni and Vning did not label or identify the goods that were delivered using the BAGILAANOE mark. *Id.*, ¶¶ 11-12. Nor did Defendant Koneni or Vning add the BAGILAANOE mark to the walmart.com listing that generated the sales. *Id.*, ¶¶ 9-10. The sales were simply a result of the Walmart Marketplace algorithmically determining at certain moments in time that Koneni or Vning should be the default retailer listed for the underlying generic apparel, when an Illinois customer happened to click to buy the apparel. *Id.*, ¶ 8. In sum, the sales have nothing to do with any use of the BAGILAANOE mark.

7

Specific personal jurisdiction—the only type of personal jurisdiction that could possibly apply to these defendants—requires that "the alleged injury arises out of the defendant's forum-related activities." *Matlin v. Spin Master Corp.*, 921 F.3d 701, 706 (7th Cir. 2019). A sale that that does not relate to the alleged injury does not confer personal jurisdiction. *Matlin*, 921 F.3d at 706-07; *see also Sun Chenyan v. P'ships and Unincorp. Ass'ns Identified in Ex. A*, No. 20-cv-00221, 2021 WL 18112888, at *5-6 (N.D. Ill. May 6, 2021) (sales on third-party website not sufficient to establish personal jurisdiction).[1]

In sum, the Court lacks personal jurisdiction over each Defendant, and the default judgment must be vacated and the claims against them dismissed.

### B. The Default Judgment Also Should Be Vacated Because Defendants' Delay Is Excusable and Defendants Have Meritorious Defenses.

To the extent that the Court determines that it has personal jurisdiction over one or more Defendants, the default judgment nevertheless should be vacated under Rule 60(b)(1).

#### 1. Defendants Have a Meritorious Defense Against the Statutory Damage Award Because Defendants Do Not Use Any Marks on the Generic Merchandise That They Sell and Thus Are Not Counterfeiters.

The Court's $50,000 default judgment award is based on its finding of counterfeit liability. ECF No. 45 at ¶ 2 (citing 15 U.S.C. § 1117(c)(2)); 15 U.S.C. § 1117(c)(2) ("In a case involving the use of a *counterfeit* mark … in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, …, to recover, instead of actual damages and profits under subsection (a), an award of statutory damages for any such use in

---

[1] *NBA Properties, Inc. v. HANWJH*, 46 F.4th 614 (7th Cir. 2022) does not compel a contrary result. In *NBA Properties*, the sale in question was undoubtedly related to the alleged wrongdoing, because it was a sale of an actual counterfeit product. *NBA Properties*, 46 F.4th at 617-18. The Seventh Circuit expressly distinguished *Matlin* on the grounds that there (as in this case), the sale was not related to the alleged wrongdoing. *Id.* at 625.

connection with the sale, offering for sale, or distribution of goods or services …") (emphasis added). Plaintiff, however, failed to make a *prima facie* case of counterfeiting.

To support counterfeiting, Plaintiff referenced its general allegations in the Complaint:

> Dejiayun alleged in its Complaint [Doc. 1] that its BAGILAANOE Trademark is distinctive, [*Id.* at ¶¶ 10, 13-14] that Defaulting Defendants have knowledge of Dejiayun's rights in the BAGILAANOE trademark, [*Id.* ¶¶ 24, 34, 40] that Defaulting Defendants are not authorized to use the BAGILAANOE Trademark [*Id.* ¶¶ 12, 24, 26, 28-29] and that Defaulting Defendants' use of the BAGILAANOE Trademark causes a likelihood of confusion.

ECF No. 34 at 5-6 ( "Plaintiff Has Properly Pled a Claim for Trademark Infringement and Counterfeiting"). Plaintiff conflates the requirement to establish a trademark infringement claim with the more exacting standard to prove a counterfeiting claim. *See Specht v. Google, Inc.*, 660 F. Supp. 2d 858, 865-66 (N.D. Ill. 2009) ("[c]ounterfeiting is a subset of trademark infringement. [Although] all counterfeits infringe, . . . not all infringements are counterfeit.") (internal citation omitted); *Chi. Mercantile Exch. Inc. v. Ice Clear US, Inc.*, No. 18-cv-1376, 2021 WL 3630091 at *14 (N.D. Ill. Aug. 17, 2021) ("Thus, counterfeiting is 'hard core' or 'first degree' trademark infringement and is the most blatant and egregious form of 'passing off.'").

Specifically, the more exacting standard requires Plaintiff to prove that defendant "*used a trademark* that was (1) spurious—identical with or substantially indistinguishable from [plaintiff's mark]; (2) *on the goods or services for which the genuine mark is registered*; (3) without [plaintiff's] authorization." *Chi. Mercantile Exch. Inc.*, 2021 WL 3630091 at *15 (emphasis added); *accord Specht*, 660 F. Supp. 2d at 865 ("Counterfeiting is the act of producing or selling a product with a sham trademark that is an intentional and calculated reproduction of the genuine trademark."). The requirement for finding the registered mark *on the actual merchandise* is well-established law in other jurisdictions as well. *See Ill. Tool Works Inc. v. J-B Weld Co., LLC*, 469 F. Supp. 3d 4, 8 (D. Conn. 2020) (when determining whether counterfeiting

9

has occurred, court "must examine the allegedly counterfeit product 'from the standpoint of an average purchaser' and compare the product '*with the registered mark imprinted on actual merchandise.*') (emphasis added); *Colgate-Palmolive Co. v. J.M.D. All-Star Imp. & Exp.*, 486 F. Supp. 2d 286, 289 (S.D.N.Y. 2007) (same), *followed by Lontex Corp. v. Nike, Inc.*, 384 F. Supp. 3d 546, 557 (E.D. Pa. 2019).

Applying the proper legal standard to the facts as alleged (even accepting factual allegations as true), Plaintiff presented no evidence showing counterfeiting because there is no allegation that Defendants *used the BAGILAANOE trademark on any goods* Defendants sold.[2] As a matter of fact, Defendants do not use *any marks* on the generic apparel that they sell — apparel that Defendants lawfully source from the same manufacturers as Plaintiff does. *See supra*, § II, ¶¶ 11-12. In sum, there is no plausible allegation, let alone evidence, of counterfeiting. Plaintiff obtained the $50,000 statutory damage award under false pretenses.

    **C.**     **Defendants Have a Meritorious Defense Against Trademark Infringement Because Defendants Are Not the Source of the Listings That Plaintiff Relied on as Evidence of Defendants' Alleged Wrongdoing.**

Not only there is no evidence to prove counterfeiting, the evidence available also shows Defendants have a meritorious defense against Plaintiff's trademark infringement claim. A

---

[2] Plaintiff's representation to the Court that Defendants sold counterfeits is especially troubling here because it does not appear Plaintiff has ever *investigated* whether counterfeiting could have been occurring. Plaintiff admitted on the record that it "did not actually order any products utilizing the address of the courthouse [at 219 S. Dearborn] nor were these order details transmitted to Defendants." ECF No. 40 at ¶ 8. The evidence Plaintiff submitted to the Court, however, consists entirely of screenshots of fake sales for shipping to the Chicago courthouse. *See, e.g.,* ECF No. 9 at 35 of 297 (ordering women's raincoat from Homgood for shipping to the Courthouse); at 55 of 297 (ordering women's midi dress from Koneni for shipping to the Courthouse); at 69 of 297 (ordering kids' outfit from Looling for shipping to the Courthouse); at 204 of 297 (ordering cargo shorts from Vning for shipping to the Courthouse). The record shows that Plaintiff has not purchased a single product from any Defendants to properly perform a Rule 11 pre-filing analysis.

fundamental element of a trademark infringement claim is that defendant *uses* or *applies* the registered mark in a way to cause confusion as to the origin or source of the goods. *See* 15 U.S.C. § 1114(1). Here, Defendants have not "used" or "applied" the BAGILAANOE mark *at all* to their products. *See supra*, § II, ¶¶ 11-12. Plaintiff's evidence of infringement consists instead of screenshots showing Defendants as sellers for walmart.com listings Defendants did not create. *Id.*, ¶ 9-10.

      The walmart.com ecommerce platform allows a third-party seller to make competing offers for items posted for sale by others. *Id.*, ¶ 8. Specifically, a third-party seller may search and "find an existing Walmart.com listing" and "set up the item in [the third-party seller's] catalog *using the existing item data.*" *See* Chen Decl. ¶ 3; Ex. 1 (emphasis added). Once the third-party seller set up the item in its own catalog with offer details such as "Selling Price" and "SKU," "*[a]ll other product information that is already in Walmart's unified catalog is added to the [third-party seller's] item (i.e., Product Images, Brand, etc.) when it is processed and added to [the third-party seller's] product catalog" Id.* (emphasis in original). If an item is added to the third-party's product catalog, the product listing will include the third-party as an additional seller. *See supra*, § II, ¶ 8. This practice is manifested by the "More seller options" feature in the product listings. *See, e.g.*, ECF No. 9 at 35 of 297 (showing two additional sellers identified as "Grande vente" and "Joybuy" besides defendant Homgood). Walmart.com thus offers a virtual market where different vendors can set shops next to each other and compete. The Walmart Additional Seller practice is legal and even encouraged by the Walmart ecommerce platform. *See supra*, § II, ¶ 8.

      Both Plaintiff and Defendants sell *generic* merchandise with no brand labels affixed to the merchandise. *See supra*, § II, ¶¶ 11-12; *see also* Chen Decl. ¶ 5; Ex. 4 (no brand label on product images offered under the BAGILAANOE mark); *compare* Chen Decl. ¶ 6; Ex. 5

(product images having Nike swoosh logo and/or Nike mark on the merchandise). The apparel is *not* manufactured by the BAGILAANOE brand owner. *See supra*, § II, ¶ 11. The apparel is *not* exclusively manufactured for the BAGILAANOE brand owner either. *Id.* As a matter of fact, Defendants oftentimes buy the apparel from the same manufacturers. *Id.* Consequently, there cannot be any likelihood of confusion to the consumer about the origin or source of the goods. There is no "palming off" of any goodwill associated with BAGILAANOE.[3]

Finally, to the extent that Plaintiff contends that infringement occurred because Defendants adopted the BAGILAANOE mark in the product listing titles, this argument is a red herring, because an additional seller may not alter the content of an existing listing. *See* Chen Decl. ¶ 3; Ex. 2 ("The Item Content section displays all of the product information for the particular item and reflects the current information shown on Walmart.com. This content may have been provided by another user with a higher content rank. If you submit an update to an attribute for which you are not the highest-ranked user, the update will not take effect on the Item Page or in this interface.") The only reason an apparel listing appears on walmart.com with the BAGILAANOE mark in the listing title is because *Plaintiff (or its licensee)* created the listing this way. Defendants could not have added BAGILAANOE to the listings, nor could they have removed it if Plaintiff used it in error.

---

[3] Because Plaintiff does not appear to use the "BAGILAANOE" mark *on the actual merchandise*, the "BAGILAANOE" mark is thus not used in commerce. 15 U.S.C.S. § 1127 ("a mark shall be deemed to be in use in commerce — (1) on goods when — (A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto…"). The BAGILAANOE mark is therefore cancellable as a trademark, which is an additional defense. *See Am. Eagle Outfitters, Inc. v. Am. Eagle Furniture, Inc.*, No. 11-cv-02242, 2013 WL 6839815 at *12 (N.D. Ill. Dec. 27, 2013) ("the Court concludes that … the record evidence does demonstrate a lack of use and cancellation is required").

Because Plaintiff's entire case is built on a misconception of how the BAGILAANOE mark appears on the walmart.com listings and how Defendants become associated with such listings, its infringement claims fail. Defendants cannot be liable for trademark infringement.

### D. Defendants' Delay in Seeking to Vacate the Default Judgment Is Excusable Under the Circumstances.

Defendants' delay is excusable under Rule 60(b)(1) because Defendants have "good causes" for their failure to timely answer or respond to the Complaint and have taken "quick actions" to seek to vacate the default judgment.

When determining what amounts to "excusable neglect" under Rule 60(b)(1), the full circumstances regarding the movant's failure to comply with a filing deadline must be considered. "These include . . . the danger of prejudice to the defendant, the length of the delay and its potential impact on judicial proceedings, the reasons for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted within good faith." *Robb v. Norfolk & Western Ry. Co.*, 122 F.3d 354, 359 (7th Cir. 1997) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 395 (1993)). These factors are not an exclusive list. "In fact, the Court emphasized that trial judges should 'take account of *all* relevant circumstances surrounding the party's omission' and specifically rejected an approach that would 'narrow the range of factors to be considered.'" *Id.* at 362. The Seventh Circuit has found, for example, that a party's neglect was excusable where the defendant did not have access to United States counsel and did not possess "either legal knowledge or access to American legal materials to permit him *pro se* to contest the forfeiture action or the entry of a default judgment from a foreign country." *U.S. v. $48,595*, 705 F.2d 909, 912 (7th Cir. 1983). Under those circumstances, even a forty-nine-week delay in filing a Rule 60(b) motion was found reasonable, and the defendant's default "was the result of excusable neglect." *Id.* at 913.

13

Good cause exists to excuse Defendants' failure to timely respond to the Complaint. Defendants have no physical presence in the United States. *See supra*, § II, ¶¶ 1-4. Defendants were not represented by U.S. counsel. *Id.*, ¶ 16. Defendants had no prior experience with U.S. lawsuits. *Id.*, ¶ 21. Defendants did not appreciate the legal consequences of missing the February default hearing date. *Id*. As soon as the Defendants learned about the lawsuit around mid-January 2022, and their principal visited the Plaintiff in Southern China and tried to settle the lawsuit directly. *Id.*, ¶ 15. Plaintiff's principal explained that they are agreeable to a settlement, but advised that Defendants must contact Plaintiff's counsel because counsel has the ultimate settlement authority. *Id*. Defendants emailed Plaintiff's counsel on February 8, 2022 and made an opening offer. *Id.*, ¶ 16. Plaintiff's counsel made a counteroffer on February 12—three days before the scheduled hearing for the default motion. *Id*.

Defendants took quick actions after the Court entered the default on February 17, 2022 under the circumstances. Defendants continued to reach out to Plaintiff's counsel to seek settlement after the default was entered. *Id.*, ¶ 17. Defendants' emails were ignored until late June, after Defendants urged Plaintiff for a response by Plaintiff's counsel. *Id*. Reversing its previous settlement positions, Plaintiff's counsel demanded on July 1 the full default judgment amount of $50,000 from Homgood, Vning, and Koneni and $14,385 from Looling. *Id.*, ¶ 18. Perceiving Plaintiff's counsel and Plaintiff were playing delay tactics and negotiating in bad faith, Defendants decided to seek counsel. *Id.*, ¶ 19. For the past four months, Defendants have interviewed three law firms who have either expressed reluctance for representation, or quoted prohibitive case budget. *Id.*, ¶ 20. The communication with multiple law firms took significant time. *Id*. Defendants finally approached Mr. Hua Chen, Esq. from ScienBiziP, and confirmed their engagement over the weekend. Chen Decl. ¶ 8. This motion immediately follows. *See Wis. Carpenters Pension Fund v. Jokipii Demolition, LLC*, 2007 U.S. Dist. LEXIS 32540, at *7-8

14

(E.D. Wis. May 2, 2007) (excusing a delay of six months because the delay "was less than the one year allowed by the rule"). Most importantly, the history above demonstrates that Defendants have not "deliberately and wil[l]fully defied the Court or disregarded the litigation." *Bieganek v. Taylor*, 801 F.2d 879, 882 (7th Cir. 1986). The liberal policy in this District that favors "trial on the merits over default judgment" should therefore be followed. *Delgado v. I.C. Sys.*, No. 17-cv-04918, 2020 WL 5253686, at *1 (N.D. Ill. Sept. 3, 2020) (citing *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 631 (7th Cir. 2009)).

Finally, there are additional factors in favor of reopening the case for Defendants. First, Plaintiff will suffer little or no prejudice because the case is still open. There are two other motions to vacate pending. ECF No. 91 (filed Nov. 1, 2022); No. 102 (filed Nov. 14, 2022). The Court set briefing schedules for both motions. ECF Nos. 95, 104. *See Summit Fin. Res. L.P. v. Big Dog Enters. Logistics, LLC*, No. 07-cv-0187, 2008 WL 687279, at *3 (S.D. Ill. Mar. 12, 2008) (finding a Rule 60(b)(1) moving party's action is "sufficiently prompt" in view of the case schedule). Second, vacating the default order will not prejudice the orderly administration of the case because the Complaint was filed less than a year ago and the case barely passed the answer stage. *See Ried v. Swift Gift, Ltd.*, No. 04-cv-6605, 2006 WL 398171, at *3 (N.D. Ill. Feb. 14, 2006) (finding in favor of vacating a default because the case "did not progress past the answer " and because the case was instituted "a little over a year ago."); *Tate v. Riverboat Servs.*, 305 F. Supp. 2d 916, 921-22 (N.D. Ind. 2004) (finding in favor of vacating a default because the case was instituted "less than a year ago.").

## IV. CONCLUSION

WHEREFORE, for the foregoing reasons, Defendants respectfully request that the Court grant their motion under Rule 60(b)(4) and dismiss the claims against Defendants for lack of personal jurisdiction; or, in the alternative, grant their motion under Rule 60(b)(1).

Dated: November 25, 2022

Respectfully Submitted,

**Defendants Xiupinxuan d/b/a Homgood; Lesaijia d/b/a Koneni; Huafu d/b/a Looling; and yiwuqizhong d/b/a Vning**

By: /s/ Daniel I. Konieczny
      One of Its Attorneys

Hua Chen (admission pending)
SCIENBIZIP, P.C.
550 S. Hope Street, Suite 2825
Los Angeles, California 90071
Telephone: (213) 426-1771
huachen@scienbizippc.com

Daniel I. Konieczny (#6275293)
TABET DIVITO & ROTHSTEIN LLC
209 S. LaSalle St., 7th Floor
Chicago, IL 60604
Telephone: (312) 762-9450
Facsimile: (312) 762-9451
dkonieczny@tdrlaw.com